**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| STANLEY POSTELL | : | |
| Appellant | : | No. 526 EDA 2020 |

Appeal from the PCRA Order Entered January 31, 2020,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0008438-2013.

BEFORE: BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED DECEMBER 15, 2020**

Stanley Postell appeals from the order denying his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A. §§9541-46. Additionally, Postell's court-appointed PCRA counsel has filed a motion for leave to withdraw from representation, as well as a "no-merit" letter pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). We grant counsel's motion to withdraw and affirm the PCRA court's order denying post-conviction relief.

The pertinent facts have been summarized as follows:

> In the days leading up to April 11, 2013, a group of high school students associated with the Lansdowne section of Philadelphia, and a group of high school students associated with the Wynnefield section of Philadelphia, had an escalating series of conflicts. On April 2013, Basil Harrison from Wynnefield, was going to fight Anthony White, known

as "Tone," from Lansdowne as the next step in this conflict. On April 11, 2013, prior to the fight, Harrison met with his friends from Wynnefield, Tyler Blango and Rahim Pleasant. Harrison informed Blango and Pleasant that there was going to be a fight at the Tustin Playground, across from the Overbrook High School, and that he thought some of the people who would be present would have guns. Blango was armed with a silver Colt .38 revolver with duct tape on the handle and rubber bands relacing the missing spring that put tension on the weapon's hammer.

At approximately 3:30 in the afternoon, a group from Wynnefield, which included Harrison, Blango, and Pleasant, congregated at the Tustin Playground, in the outfield of the baseball diamond, where a group from Lansdowne was already present. [Postell] and Jaquan Jordan [co-defendant] were present with the students from Lansdowne. [Postell] was wearing a red hoody sweatshirt with light pants and possessed a .45 caliber semi-automatic handgun. By the time he arrived at the playground, Blango had been told that [Postell] was going to have a gun. Approximately 30 students were present on the playground, forming a circle around the fight location. Although Harrison and Tone were supposed to fight, Tone backed out of the fight for an unknown reason. Instead, Daquan Briscoe stepped in for Harrison while Jordan stepped in for Tone.

While Briscoe and Jordan were fighting, [Postell], Blango and Samir (a friend of Blango) got into a verbal argument. During this argument, [Postell] stated, "You got your gun? Because I got my gun too." [Postell] then drew his gun and shot at Blango and the crowd. Thereafter, Blango pulled his gun and attempted to return fire, but Blango's gun did not work. Jordan was also in possession of a firearm and shot it during the exchange, though it is unclear at whom he was shooting. Upon the shots being fired, the spectators watching the fight began to flee from the area. Blango was shot once in the hip and retreated away from the playground to the Little Caesar's Pizza store across the street. Blango was later taken to the hospital by police, where surgeons removed a portion of Blango's small intestine and colon.

While [Postell] was shooting at Blango, a fight spectator, Bernard Scott, was hit. Antoine Gardiner, an eyewitness from the street who was in his truck, stopped his vehicle

and, with the assistance of a few students from the playground, placed Scott into his truck and transported him to Lankenau Hospital. Scott was hit three times, once in the right wrist, once through the right abdomen, and once in the left wrist.

After shooting Blango and into the crowd, [Postell] fled towards 60th Street. Pleasant, who had been watching the fight, obtained a gun from Samir and chased after [Postell]. Approaching [Postell], Pleasant shot at [Postell] approximately four or five times, striking him once in the back.

Mark Robinson, an eyewitness to the shooting and [Postell's] flight, directed police officers to the direction [Postell] had fled. Police found [Postell] shortly thereafter as he walked near the corner of 61st Street and Jefferson Street. Robinson and Donald Jones, another eyewitness to [Postell's] flight, were transported to [Postell's] location, where they positively identified [Postell]. Police then placed [Postell] under arrest and were about to transport him to police headquarters when [Postell] stated, "I'm shot, I'm shot in the back." The arresting officers verified that [Postell] had been shot and transported him to the University of Pennsylvania Hospital.

[Postell] was interviewed at [the] hospital, where he denied being present at the fight. [Postell] also denied having a gun that day. [Postell] further stated that he must have been shot while Pleasant or Blango were shooting at an unidentified male in a plaid shirt. After [Postell's] release from the hospital the next day, he provided another statement to police. In his second interview, [Postell] stated he was present in the playground and that, while the fight was ongoing, "Rahim['s] brother" took a gun from a "little short boy on [a] bike," pointed it at everybody, and started shooting. [Postell] further stated that he was shot in the back and that he then drew his gun and indiscriminately fired back as he was running away. [Postell] admitted to possessing a "big" gun, either a .40 or a .45 caliber pistol.

Police recovered five .45 caliber fired cartridge casings at the scene of the shooting. Another four .380 caliber fired casings were recovered at the alley where Harrison shot at [Postell].

*Commonwealth v. Postell*, 153 A.3d 853 (Pa. Super. 2016), unpublished memorandum at 2-4 (footnote omitted). As a result of the gunfire, Blango was wounded and Scott was killed.

On September 26, 2014, a jury convicted Postell of first-degree murder and related charges.[1] That same day, the trial court imposed the mandatory life sentence for the murder conviction and imposed no further penalty on the remaining convictions. Postell filed a post-sentence motion which the trial court denied.

Postell filed a timely appeal to this Court. In an unpublished memorandum filed on July 13, 2016, we rejected Postell's appellate issues and affirmed his judgment of sentence. *See Postell*, *supra*. Postell did not seek further review.

On July 13, 2017, Postell filed a timely *pro se* PCRA petition. The PCRA court appointed counsel. On April 27, 2018, PCRA counsel filed an amended petition, as well as a supplemental petition on August 8, 2019. In the petition, Postell asserted that his trial counsel was ineffective for failing to call exculpatory witnesses and character witnesses on his behalf at trial. The Commonwealth filed a motion to dismiss on October 8, 2019. On December

---

[1] Postell was tried jointly with his co-defendant, Jaquan Jordan. The jury convicted Jordan of firearm violations and possession of an instrument of crime. The trial court sentenced him to an aggregate term of four to twelve years of imprisonment. In an unpublished memorandum filed on May 17, 2016, we rejected Jordan's challenge to the discretionary aspects of his sentence. *See Commonwealth v. Jordan*, 151 A.3d 1148 (Pa. Super. 2016).

6, 2019, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Postell's petition without a hearing. Postell did not file a response. By ordered entered January 31, 2020, the PCRA court entered an order denying Postell's PCRA petition. Thereafter, the PCRA court appointed current counsel. This timely appeal followed. Both Postell and the PCRA court have complied with Pa.R.A.P. 1925.

We first address current counsel's motion to withdraw. Pursuant to **Turner/Finley**, **supra**, before seeking leave to withdraw, a criminal defendant's counsel must review the record to determine if any meritorious issue exists. **See Commonwealth v. Pitts**, 981 A.2d 875, 876 n.1 (Pa. 2009). In **Pitts**, our Supreme Court explained that such review by counsel requires proof of:

1. A "no-merit" letter by PC[R]A counsel detailing the nature and extent of his review;

2. The "no-merit" letter by PC[R]A counsel listing each issue the petitioner wished to have reviewed;

3. The PC[R]A counsel's "explanation," in the "no-merit" letter, of why the petitioner's issues were meritless;

4. The PC[R]A court conducting its own independent review of the record; and

5. The PC[R]A court agreeing with counsel that the petition was meritless.

**Id**. (citation and brackets omitted). Further, PCRA counsel seeking to withdraw from representation in this Court must contemporaneously forward to the petitioner a copy of the petition to withdraw that includes (1) a copy of

both the "no-merit" letter, and (2) a statement advising the PCRA petitioner that, upon the filing of counsel's petition to withdraw, the petitioner has the immediate right to proceed *pro se*, or with the assistance of privately retained counsel. ***Commonwealth v. Muzzy***, 141 A.3d 509, 511-12 (Pa. Super. 2016).

Upon review, we conclude that PCRA counsel has substantially complied with the ***Turner/Finley*** requirements as set forth above. ***See Commonwealth v. Karanicolas***, 836 A.2d 940, 947 (Pa. Super. 2003) (holding that substantial compliance with requirements to withdraw as counsel will satisfy the ***Turner***/***Finley*** criteria). We now independently review Postell's claim to ascertain whether it entitles him to relief.

Our scope and standard of review is well settled:

> In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 779 (Pa. Super. 2015) (citations omitted).

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a

petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Blakeney*, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

Postell claims that the PCRA court erred in dismissing, without a hearing, his claim that trial counsel was ineffective for failing to call certain witnesses at is trial. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) petitioner was prejudiced by counsel's act or omission. *Id.* at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).

As noted above, Postell asserts that trial counsel was ineffective for failing to call exculpatory witnesses and character witnesses on his behalf at trial. Our standard of review is well settled:

> When raising a claim of ineffectiveness for failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the [**Strickland v. Washington**, 466 U.S. 668 (1984)] test by establishing that: (1) the witness existed; 2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial[.]

**Commonwealth v. Matias**, 63 A.3d 807, 810-11 (quoting **Commonwealth v. Sneed**, 45 A.3d 1096, 1108-09 (Pa. 2012).

Here, the PCRA court first noted that Postell's counseled PCRA petition focused only on one eyewitness, Joshua Marthone:

> As to Marthone, [Postell] submitted an affidavit in which Marthone averred that when he was incarcerated at State Correctional Institution ("SCI") Dallas with [Postell] in 2018, they had a conversation about the shooting for which [Postell] was convicted. Marthone claims that he was at the scene of the shooting, Overbrook High School, and saw an individual in a bright green shirt fire a gun. According to Marthone, after he saw a "boy laying in the [baseball] field," he started to run away and again heard the sound of a gun firing multiple times. Marthone further claims after he conveyed this information to [Postell], [Postell] started to cry and told [Marthone] that he could "save [Postell's] life" if Marthone were willing to submit an affidavit with the above-mentioned information.

PCRA Court Opinion, 3/11/20, at 8 (citations omitted).

The PCRA court then explained why Postell's claim of ineffectiveness for failing to call Marthone at trial failed:

> [Postell's] claim is without merit for two reasons. First, [trial counsel] had no reason to know, at the time of the trial, that Marthone was a witness. [Postell] does not aver any reason why [trial counsel] should have known of Marthone's existence, and Marthone's own affidavit indicated that [Postell] did not know Marthone was a witness to the incident until 2018, well after trial, when both he and Marthone were incarcerated at SCI Dallas.
>
> Moreover, even if [trial counsel] knew about Marthone, he still would not have been ineffective for failing to present him at trial. In his affidavit, Marthone claims that he saw a person in a bright green shirt fire a gun, but that he did not see the face of the shooter. The evidence at trial established that co-defendant [Jordan] was wearing a green shirt and that several individuals, including Jordan and [Postell], who was wearing a red hoody, fired guns on the day of the incident. Accordingly, Marthone's affidavit merely corroborates that there was an individual in a green shirt who fired a gun. It does not contradict the evidence presented at trial that [Postell] discharged his firearm.

PCRA Court Opinion, 3/11/20, at 8-9 (citations omitted).

Finally, the PCRA court emphasized how the information in Marthone's affidavit would not have benefitted Postell at trial, given other evidence actually introduced by the Commonwealth:

> At trial, six eyewitnesses claimed that they saw [Postell] fire a gun in the direction of [Blango]. In addition, [Postell] admitted in a statement to detectives that he fired a gun multiple times and that he was acting in self-defense. Further, ballistic evidence demonstrated that Blango and the decedent, [Scott] were shot by .45 caliber bullets, which matched the caliber of the gun [Postell] stated he had fired. Accordingly, Marthone's proposed testimony would not have exculpated [Postell] in any manner. As a result, the absence

> of is testimony could not have been so prejudicial as to have denied [Postell] a fair trial.

PCRA Court Opinion, 3/11/20, at 9 (citations omitted). Thus, the PCRA court concluded that Postell's ineffectiveness claim involving Marthone failed, and that it properly denied the claim without first holding a hearing.

Our review of the record supports the trial court's conclusions that Postell did not meet his burden under **Matias**, **supra**, and even if he did, Marthone's testimony would not contradict any evidence presented against Postell at trial.

As to the failure to call character witnesses, our review of the record supports the PCRA court's conclusion that Postell failed to meet the **Matias** test because he never identified these proposed witnesses. **See** PCRA Court's Opinion, 3/11/20, at 9-10. For this reason alone, the PCRA court correctly denied this ineffectiveness claim without a hearing. **Commonwealth v. Treiber**, 121 A.3d 435, 464 (Pa. 2015).

In sum, because the record supports PCRA counsel's determination that Postell's ineffectiveness claim lacks merit, we grant PCRA counsel's motion to withdraw, and affirm the PCRA court's order denying Postell post-conviction relief.

Motion to withdraw granted. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/15/2020